903 P.2d 1273

**John H. ENOS, Jr. and Aileen H. Enos, Plaintiffs–Appellants,**

**v.**

**PACIFIC TRANSFER & WAREHOUSE, INC., a Hawai'i corporation, and Maynard Koa, Defendants–Appellees, and John Does 1–10, and Doe Entities 1–10, Defendants, and Leslie S. Fukumoto, Party in Interest–Appellant.**

No. 18438.

Supreme Court of Hawai'i.

Sept. 26, 1995.

Reconsideration Denied Oct. 16, 1995.

---

party in interest-appellant Leslie S. Fukumoto.

Robert P. Richards and Michele–Lynn E. Luke of Reid, Richards & Miyagi, Honolulu, for defendants-appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Appellant Leslie S. Fukumoto, the attorney representing plaintiffs-appellants John and Aileen Enos (collectively, the Enoses) in their personal injury action against defendants-appellees Pacific Transfer & Warehouse, Inc. and Maynard Koa (collectively, Pacific Transfer), appeals from the First Circuit Court's order imposing sanctions against him for his post-verdict efforts to enforce the judgment in favor of the Enoses. For the reasons discussed below, we reverse.

## I. BACKGROUND

Fukumoto represented the Enoses in their claims against Pacific Transfer, arising out of a motor vehicle accident that occurred on December 10, 1985. The jury, by special verdict, awarded damages in favor of the Enoses against Pacific Transfer in the amount of $905,000.00, and judgment was entered on April 9, 1994. Subsequent to the entry of judgment, the following events occurred:

June 3, 1994 Pacific Transfer timely filed its notice of appeal, pursuant to an order extending the time to appeal.[1]

June 20, 1994 The Enoses filed their notice of cross-appeal.

June 21, 1994 Pacific Transfer submitted a supersedeas bond[2] to the circuit court for approval.

June 27, 1994 Certificate of service of the supersedeas bond was mailed to Fukumoto.

Leslie S. Fukumoto and Pamela O'Leary Tower, Honolulu, for plaintiffs-appellants and

1. The appeal was docketed in this court as No. 18123; disposition is currently pending.

2. A supersedeas bond is "[a] bond required on one who petitions to set aside a judgment or

July 1, 1994 The circuit court entered its order denying Pacific Transfer's motion for judgment notwithstanding the verdict or in the alternative, for new trial, and motion for remittitur.

July 6, 1994 Pacific Transfer filed an amended notice of appeal.

July 11, 1994 The Enoses filed an *ex parte* "Motion for Order for Examination of Alvin A. Tanaka, Person having Knowledge of the Affairs or Property of Defendant Pacific Transfer & Warehouse, Inc." [hereinafter, motion for examination], which was signed by Pamela O'Leary Tower, an associate in Fukumoto's law office. Attached to the motion was an affidavit by Tower made in support of the motion for examination.

July 11, 1994 The circuit court entered its order granting the motion for examination [hereinafter, order for examination] and scheduled the examination for August 1, 1994.

July 15, 1994 The circuit court approved and entered the supersedeas bond, resulting in a stay on the execution of judgment and proceedings for enforcement.[3]

The Enoses filed an amended notice of cross-appeal.

July 20, 1994 Tower filed a "Corrective Affidavit of Counsel in Support of [the motion for examination]."

July 21, 1994 Pacific Transfer filed a "Motion for Order to Set Aside Plaintiffs' Ex Parte Motion for Order for Examination of Alvin A. Tanaka, Person Having Knowledge of the Affairs or Property of Defendant Pacific Transfer & Warehouse, Inc. filed July 11, 1994 and for Rule 11 Sanctions" [hereinafter, motion for sanctions]. The motion for sanctions was scheduled to be heard on August 1, 1994.

July 26, 1994 The Enoses filed a notice of withdrawal of the motion for examination, which was signed by Fukumoto and dated July 22, 1994.

At the hearing on its motion for sanctions on August 1, 1994, Pacific Transfer argued that the order for examination should be set aside because Tower's original affidavit in support of the motion for examination contained misrepresentations. Specifically, Pacific Transfer argued that Tower's representation that the final judgment in the case "has not been appealed from, reversed, modified, set aside or satisfied, and still remains in full force and effect" was erroneous.

In response, Tower explained that, prior to the filing of any notices of appeal, she had submitted a motion for examination that the circuit court clerk refused to file because of a typographical error. Upon resubmission, she admitted that she had failed to correct her affidavit to reflect that Pacific Transfer's notice of appeal and the Enoses' cross-appeal had since been filed. Despite Tower's apology for her "mistake," Pacific Transfer maintained that

> the actions of Plaintiffs' counsel cannot be construed as inexcusable neglect or oversight. On the contrary, it is evident that Plaintiffs' conduct is intentional. Further still, it is obvious that the only purpose served by Plaintiffs' actions is to harass Pacific Transfer & Warehouse, Inc. and its President, Alvin A. Tanaka.

Pacific Transfer also asserted that the attempt to enforce the judgment was in "blatant disregard" of the statutory provisions providing for a stay of proceedings upon the approval of a supersedeas bond. *See supra* note 3.

At the hearing on the motion for sanctions, Michele–Lynn Luke, counsel for Pacific Transfer, argued that her office "had volun-

---

execution and from which the other party may be made whole if the action is unsuccessful." *Black's Law Dictionary* at 1437 (6th ed. 1990).

**3.** *See* Hawai'i Revised Statutes (HRS) § 641–3(d) (1985) ("When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay.... The stay is effective when the supersedeas bond is approved by the court."); *accord* Hawai'i Rules of Civil Procedure (HRCP) Rule 62(d) (1990).

teered to draft and run around for the filing of a stipulation to set aside the order [for examination]"; however, the offer "was outright refused on several occasions by Mr. Fukumoto." The circuit court stated:

> This is the problem I'm having because I sense a little game[s]manship here. Why would the Plaintiff feel insecure if the party is in the process of posting a bond? It's not a race to judgment. A motion for examination of judgment is an effort to collect on a judgment. And if one has—if counsel has notice that one is in the process of posting a bond, what's the rush for collection? ... I think—what I suspect is happening is that Plaintiffs' counsel is trying to force a payment. And this is harassment. And I don't think, you know, the courts nor the law should condone it ... [Pacific Transfer was] going to have a bond approved, so what's the sense in rushing to collection?

The circuit court concluded that "Miss Tower's actions I believe were excusable neglect but Mr. Fukumoto's actions I think were egregious because once he received notice that a bond had been posted, he should have immediately withdrawn the request for examination." The court, by written order filed on September 7, 1994, granted Pacific Transfer's motion for sanctions, awarding attorney's fees and costs incurred from July 15, 1994, the date the supersedeas bond was approved by the court, in the amount of $1,109.50 in favor of Pacific Transfer and against Fukumoto. This timely appeal followed.

## II. DISCUSSION

In moving to set aside the order for examination, Pacific Transfer requested "an award of all reasonable attorneys' fees and costs related to the bringing of this Motion and for Rule 11 sanctions against Plaintiffs' counsel for misconduct."

### A. *Sanctions Under HRCP Rule 11*

▇ HRCP Rule 11 (1990) provides in pertinent part:

> *Every pleading, motion, and other paper* of a party represented by an attorney *shall be signed by at least one attorney of record in his [or her] individual name,* whose address shall be stated.... *The signature of an attorney* or party *constitutes a certificate by him [or her]* that he [or she] has read the pleading, motion, or other paper; that to the best of his [or her] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and *that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon *the person who signed it,* a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, *including a reasonable attorney's fee.*

HRCP Rule 11 (1990) (emphases added). "The cornerstone of Rule 11 is the certification requirement; that is, Rule 11 sanctions must be based on the signature of an attorney or client on a pleading, motion, or other paper in a lawsuit." *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) (citing *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 541–43, 111 S.Ct. 922, 928–29, 112 L.Ed.2d 1140 (1991)). Rule 11 " 'does not license a ... court to sanction any action by an attorney or party that it disapproves of[.]' " *Teamsters,* 948 F.2d at 1344, (quoting *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 22 (2d Cir.1990)).

The "pleading, motion or other paper" at issue in the present case is the July 11, 1994 motion for examination, which was signed by Tower. As previously stated, Tower had mistakenly sworn in her affidavit in support of the motion for examination that the final

judgment in the case had not been appealed from, reversed, modified, set aside, or satisfied. Fukumoto contends that because he did not sign the motion for examination—the only motion specifically targeted in Pacific Transfer's motion for sanctions—that he is not subject to HRCP Rule 11 sanctions.[4] We agree.

 In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the United States Supreme Court reversed sanctions levied pursuant to the federal counterpart of HRCP Rule 11, Federal Rules of Civil Procedure (FRCP) Rule 11, against the law firm of Pavelic & LeFlore, holding that sanctions may be imposed only on the individual or "the person who signed" a paper in violation of FRCP Rule 11. The Court observed that

> [t]he signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment. Where the text [of Rule 11] establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed.

*Pavelic*, 493 U.S. at 125, 110 S.Ct. at 459. In holding that a technical reading of Rule 11 limits sanctions only to individuals who sign the filed papers, the *Pavelic* Court recognized that the goal of increased "internal monitoring" by law firms can be "achieved by directly increasing the incentive for the individual signer to take care." *Pavelic*, 493 U.S. at 127, 110 S.Ct. at 460. Thus, the message "conveyed to the attorney, that this is not a 'team effort' but in the last analysis *yours alone*, [which] is precisely the point of Rule 11." *Id.* (emphasis in original).

 Despite the fact that Fukumoto's name appeared in the text of the motion for examination and was typewritten, along with Tower's name, below the signature line, we recognize that "the purpose of Rule 11 as a whole is to bring home to the individual signer his [or her] personal, nondelegable responsibility." *Id.* at 126, 110 S.Ct. at 460; *see also Giebelhaus v. Spindrift Yachts*, 938 F.2d 962 (9th Cir.1991) (holding that a typewritten name above the signature line is not a signature for FRCP Rule 11 purposes). Therefore, because sanctions under HRCP Rule 11 are imposed only upon "the person who signed" the "pleading, motion, or other paper" and Fukumoto did not sign the motion for examination, HRCP Rule 11 is not applicable to him, and he cannot be sanctioned thereunder.[5]

### B. Sanctions Under The Court's Inherent Power

 Notwithstanding the fact that HRCP Rule 11 cannot be the basis for sanctions against Fukumoto, it is well-settled that "courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them. Inherent powers of the court are derived from the state Constitution and

---

4. We note that Fukumoto did sign the Notice of Withdrawal of the Motion for Examination. However, his signature on the Notice did not subject him to Rule 11 sanctions for two reasons: (i) the Notice of Withdrawal was not specifically targeted in Pacific Transfer's motion for sanctions; and (ii) the filing of the withdrawal actually served to stop any alleged harassment of Tanaka.

5. As previously stated, the trial court in this case did not impose Rule 11 sanctions against Tower. Although Rule 11 is "clear, unambiguous, and *mandatory* in its terms," *In re Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 16, 868 P.2d 419, 434 (1994) (emphasis in original), and an attorney's subjective good faith will not provide a cloak of protection against Rule 11 sanctions, *see Lepere v. United Public Workers 646*, 77 Hawai'i 471, 474, 887 P.2d 1029, 1032 (1995), we note that Pacific Transfer did not appeal from the trial court's decision not to impose Rule 11 sanctions against Tower due to her "excusable neglect." We decline to address this issue because it was not raised on appeal and is therefore deemed waived. *See Pele Defense Fund v. Paty*, 73 Haw. 578, 613, 837 P.2d 1247, 1272 (1992), *cert. denied*, ─── U.S. ───, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993).

are not confined by or dependent on statute." *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 507, 880 P.2d 169, 182 (citations omitted). "The courts also have inherent power to curb abuses and promote a fair process[,]" *id.,* including the power to impose sanctions in the form of attorneys' fees for "abusive litigation practices." *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.,* 6 Haw.App. 431, 436, 726 P.2d 268, 272 (1986) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)); *see also Sport Shinko,* 76 Hawai'i at 507, 880 P.2d at 182.

■ As previously indicated, Pacific Transfer requested, in addition to Rule 11 sanctions, "an award of all reasonable attorneys' fees and costs related to the bringing of this Motion[.]" Sanctions in the form of attorneys' fees and costs may be imposed by the trial court in accordance with Hawai'i Revised Statutes (HRS) §§ 603–21.9(1) and (6) (1985),[6] which is a "legislative restatement of the inherent powers doctrine." *Kukui Nuts,* 6 Haw.App. at 438, 726 P.2d at 272. Moreover, where sanctions are sought pursuant to HRCP Rule 11, "the inherent power of a court [also] can be invoked even if procedural rules exist which sanction the same conduct." *In re Dubin,* 9 Haw.App. 249, 260, 833 P.2d 85, 92 (1992) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991)). However,

> [s]anctions are not to be assessed without full and fair consideration by the court. They often entail a fine which may have more than a token effect upon an attorney's resources. More importantly, they act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have tangible effect upon the attorney's career.

*Simmerman v. Corino,* 27 F.3d 58, 64 (3d Cir.1994). These concerns are balanced with our observation that

lawyers who know how to think but have not learned how to behave are a menace and a liability ... to the administration of justice.... [T]he necessity for civility is relevant to lawyers because they are ... living exemplars—and thus teachers—every day in every case and in every court; and their worst conduct will be emulated ... more readily than their best.

*Hawaiian Flour Mills,* 76 Hawai'i at 18, 868 P.2d at 436 (Levinson, J., concurring) (quoting former Chief Justice Burger in his address to the American Law Institute, Washington, D.C., reported in the *National Observer,* May 24, 1971, and reprinted in D. Schrager and E. Frost, *The Quotable Lawyer* 193 (1986)).

However, "[t]he Supreme Court has cautioned that because of the very potency of a court's inherent power, it should be exercised with restraint and discretion." *Teamsters,* 948 F.2d at 1345 (citations and internal quotations omitted); *see also Kukui Nuts,* 6 Haw.App. at 436, 726 P.2d at 272 (" '[B]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.'" (Citation omitted.)). The *Teamsters* court recognized that a particularized showing of bad faith is required to justify the use of the court's inherent power, and stated that

> we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

*Id.* (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986) (citations, internal brackets, and internal quotations marks

---

6. HRS 603–21.9 provides in pertinent part that: The several circuit courts shall have power: (1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;

.....

(6) To make and award such judgments, decrees, orders, and mandates, issue such execu-

tions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

omitted)); *see also Kukui Nuts,* 6 Haw.App. at 436, 726 P.2d at 272 (holding that a necessary precedent to any sanction of attorneys' fees under the court's inherent powers was the finding that the attorney's conduct "constituted or was tantamount to bad faith" (citation omitted)).

▮ Although it is well-settled that "[a]n appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance[,]" *Strouss v. Simmons,* 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982) (citations omitted), we believe that, in order to facilitate a meaningful and more efficient appellate review, an order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority (*e.g.,* HRCP Rule 11 or the court's inherent power). *See, e.g., In re Yagman,* 796 F.2d 1165, 1184 (sanction award should be quantifiable with some precision and should be properly itemized in terms of the perceived misconduct and the sanctioning authority, because different rules, regulations, and statutes provide sanctions for different forms of misconduct), *opinion amended and reh'g denied,* 803 F.2d 1085 (9th Cir.1986), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). For purposes of appellate review, a distinction must be made between "zealous advocacy and plain pettifoggery[.]" *Teamsters,* 948 F.2d at 1344 (citation omitted).

▮ Whether sanctions are imposed pursuant to HRCP Rule 11 or pursuant to the court's inherent powers, the importance of specific findings that describe the perceived misconduct and the sanctioning authority is two-fold. First, as previously noted, it allows for more meaningful appellate review as to whether "the trial court exercised its discretion in a reasoned and principled fashion." E. Yamamoto & D. Hart, *Rule 11 and State Courts: Panacea or Pandora's Box?,* 13 U.Haw.L.Rev. 57, 88–89 (1991) (citation omitted). Second, it "assure[s] the litigants, and incidentally the judge as well, that the decision was the product of thoughtful deliberation, and ... their publication enhances the deterrent effect of the ruling." *Id.* (citations omitted). The sanction order issued in this case, however, does not contain specific findings; therefore, we are compelled to review the entire record for an abuse of discretion.[7]

The record indicates that, on July 15, 1994, Luke, apparently unaware that the supersedeas bond had been approved that same day, wrote a letter to Fukumoto and Tower, expressing her displeasure at not being served with notice of the *ex parte* Motion for Examination. She also repeated her earlier oral request that the motion for examination be withdrawn because a notice of appeal had been filed and a supersedeas bond had been submitted to the circuit court. Luke warned that, if nothing was done by July 18, her office would "file a motion for protective order and for sanctions ... and [would] explore all avenues of further addressing [their] inappropriate conduct."

Fukumoto responded to Luke on the same day (July 15, 1994) by facsimile, stating:

'Ex Parte Motions' do not require service. Also, execution on Judgments are also not typically served on opposing counsel. Opposing counsel has no right to ask questions on examination of third parties so service would also be futile.... [T]he mere filing of an appeal does not stay the execution of the same. If you are not familiar with this elementary principle of

---

7. On appellate review, regardless whether sanctions are imposed pursuant to HRCP Rule 11 or the trial court's inherent powers, such awards are reviewed for abuse of discretion. *See Hawaiian Flour Mills,* 76 Hawai'i at 15, 868 P.2d at 433 ("all aspects of a Rule 11 determination should be reviewed under the abuse of discretion standard"); *Kukui Nuts,* 6 Haw.App. at 436–37, 726 P.2d at 272 (imposition of sanctions of attorneys' fees for abusive litigation practices, pursuant to the court's inherent powers, will be reviewed for abuse of discretion). "In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered." *Kukui Nuts,* 6 Haw.App. at 436, 726 P.2d at 272 (citations omitted).

law we can provide you a citation to the same.... [T]he mere submission of a [s]upersedeas [b]ond does not stay execution of judgment, this is also elementary law. If and when the supersedeas bond is approved and filed, this office will take appropriate action.

Later that day, Luke responded by letter stating, "given your position, we will proceed with the filing of our motion for protective order since it is quite apparent that you have no intention of mitigating your misconduct."

The record indicates that, on July 18, 1994, Luke, apparently still unaware that the supersedeas bond already had been posted, sent Tower a letter advising her that the bond remained in the Judge's chambers awaiting signature and inquiring whether Tower, pursuant to their earlier conversation, had spoken to Fukumoto about agreeing to a stipulation to set aside the order for examination. She warned that, if there was no stipulation, her office would proceed with a motion to set aside the order and would seek sanctions related to the filing of the motion for examination.

As far as we can glean from the record, Fukumoto received a file-stamped copy of the bond, approved on July 15, 1994, as an attachment to Pacific Transfer's motion for sanctions when it was delivered to him on Thursday, July 21, 1994. A notice of withdrawal of the motion for examination, signed by Fukumoto on Friday, July 22, 1994, was subsequently filed by the court on Tuesday, July 26, 1994.

At the hearing on Pacific Transfer's motion for sanctions, the court stated:

The facts presented to the court indicate that there was an enforceable judgment. But what nullifies an examination is the [supersedeas] bond, and in this case the bond was posted after the filing of the motion. Now, at that point I think it's incumbent upon the person who's filing the motion to withdraw the motion.

The circuit court elaborated:

[C]ounsel knew that [Pacific Transfer was] in the process of posting a bond. They also knew that there was an appeal pend-

ing. This was an effort to collect on a judgment, and counsel knew that the—matter was on appeal. [Pacific Transfer was] in the process of posting a bond. In fact, the bond was posted and [counsel] unduly delayed withdrawal of the motion. Therefore, I find that sanctions are appropriate.

The court imposed sanctions against Fukumoto only in the form of reasonable attorneys' fees and costs from July 15, 1994, the date of the bond's approval, in the amount of $1,109.50.

▪ Our review of the record indicates that, under the circumstances of this case, the court's imposition of sanctions against Fukumoto is not supported by any showing of bad faith conduct on Fukumoto's part. There is no indication that Fukumoto knew that the supersedeas bond had been approved on July 15 and yet waited until July 26 to withdraw the motion for examination. In fact, Luke herself, at least as of July 18, did not know of the bond's approval. There is nothing in the record to indicate that Fukumoto was aware that the bond had actually been approved and posted prior to July 21, 1994, when he received a copy of Pacific Transfer's motion for sanctions to which the filed bond was appended.

Although Fukumoto had the statutory authority to pursue enforcement of a judgment pending an approval of a supersedeas bond, we acknowledge that Fukumoto's conduct pushed the limits of common courtesy and civility. Nevertheless, there is nothing in the record that convinces us that Fukumoto's conduct was "tantamount to bad faith." *Kukui Nuts*, 6 Haw.App. at 436, 726 P.2d at 272 (citation omitted). We therefore hold that, even under the court's inherent power to issue sanctions, the circuit court abused its discretion in sanctioning Fukumoto.[8]

### III. *CONCLUSION*

Based on the foregoing, we reverse the circuit court's order imposing sanctions against Fukumoto.

---

**8.** Because of our holding, we need not reach

Fukumoto's contention that the sanctions at issue

were imposed in violation of his due process rights under article I, section 5, of the Hawai'i Constitution, and the fifth and fourteenth amendments to the United States Constitution.