942 P.2d 502

**Velma LESTER, Petitioner–Appellant,**

**v.**

**John J. RAPP, Attorney at Law,
Respondent–Appellee,**

**and**

**Michellee LESTER and Patrick
R.K. Campos, Appellees,**

**v.**

**Norman LESTER, Petitioner–Appellant,**

**and**

**Martin WOLFF, Appellee/John Rapp,
Respondent–Appellee,**

**v.**

**Velma LESTER and Norman Lester,
Petitioners–Appellants.**

**No. 16387.**

Supreme Court of Hawai'i.

June 10, 1997.

Earle Partington, Honolulu, for Petitioner-Appellant Norman Lester.

Richard Pafundi, Honolulu, for Petitioner-Appellant Velma Lester.

John Rapp, appearing *pro se.*

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and Circuit Judge KOCHI, in place of KLEIN, J., recused.

MOON, Chief Justice.

Petitioners-appellants Norman Lester and Velma Lester (collectively, the Lesters) filed a timely application for a writ of certiorari seeking review of the Intermediate Court of Appeals' (ICA) December 17, 1996 memorandum opinion affirming, *inter alia,* the circuit court's denial of their motion for attorney's fees and sanctions against respondent-appellee John J. Rapp.

On January 6, 1997, this court granted certiorari on the issue of attorney's fees and sanctions. Mr. Rapp filed a supplemental brief on February 5, 1997; the Lesters did not file a supplemental brief. For the reasons set forth below: (1) we remand this matter to the circuit court for a specific determination of whether, in the court's discretion, a sanction of attorney's fees is warranted, and, if so, for the imposition of reasonable attorney's fees against Mr. Rapp;

and (2) because Mr. Rapp may have engaged in conduct that does not comport with the rules governing professional conduct, we refer this matter to the Office of Disciplinary Counsel (ODC) for its review and any appropriate action.

## I. BACKGROUND

Subsequent to a jury trial regarding the disputes between the parties, the jury returned verdicts in favor of, *inter alia,* Mr. Rapp and against, *inter alia,* the Lesters. Final Judgment was entered against the Lesters on June 26, 1991 in the amount of $658.00 in actual damages and $100,000.00 in punitive damages. The Lesters timely moved for judgment notwithstanding the verdict (JNOV) or in the alternative, for a new trial or remittitur, but the motion was denied by order on July 24, 1991. The order, however, was subsequently voided and an identical order was filed on August 13, 1992.

Apparently, Mr. Rapp had drafted the original order, opposing counsel approved it as to form and the judge signed it on July 23, 1991. The clerk file-stamped it on July 24, 1991. However, for inexplicable reasons, the original order was not entered into the record, nor was it indexed on the docket sheet. Mr. Rapp apparently received a file-stamped copy; however, it is unclear from the record whether copies were distributed to the other parties. Nevertheless, cognizant of the trial court's ruling, the Lesters appealed to this court. The appeal was dismissed, however, because the order from which the appeal was taken was not contained in the record. Upon reviewing the record, the Lesters' appellate and present counsel (attorney Earle Partington for Norman, attorney Richard Pafundi for Velma) discovered that, indeed, the order was missing.

They sought to resolve the problem by having the judge issue a new order so that they could properly appeal. On July 14, 1992, the Lesters filed "Norman Lester's and Velma Lester's Motion to Void the Purported 'Order Denying Norman and Velma Lester's Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial or Remittitur Filed June 5, 1991' Purportedly filed July 24, 1991 and for Attorney's Fees and Sanctions Against John Rapp."

Unbeknownst to the Lesters, prior to their having filed the motion, Mr. Rapp had, on June 16, 1992, taken his file-stamped July 24, 1991 order out of his files and had either gone to the clerk of the court or sent it with his secretary to have it inserted into the record. Mr. Rapp also enclosed an additional copy of the order in an envelope and had it hand-delivered to Mr. Partington and Mr. Pafundi. He did not identify himself as the delivering party and apparently failed to include a cover letter or certificate of service.

On July 24, 1992, approximately five weeks after Mr. Rapp had caused the order to be inserted, the circuit court entertained oral argument on the Lesters' motion to have the July 24, 1991 order voided and new one entered in its place. At the hearing, the following discussion took place:

[BY MR. RAPP] Mr. Partington is wrong when he represents to the court that this order is not in the file. In the '87 file it's in file 10. In the 1990 case it's in file 6.... It's a perfectly proper order.... [T]here's nothing wrong with the order.... It's in the record now. There's no basis for striking it.

[BY MR. PARTINGTON] I'll just ask, Your Honor, it's in the record now, I'd like to know when and how it got there.... It's not on the docket sheet.... It certainly wasn't in there when we wrote the brief and when I checked several weeks ago.... Now, if it's appeared in the file, I can't account for that....

[THE COURT] *At this point, it looks like some sort of clerical error.*

....

[MR. PARTINGTON] We have no objection to Your Honor voiding the file stamp and ordering that that order be refiled. We just want to make sure that that order bears the file stamp of now and does not go on appeal bearing a file stamp of 1991 because Mr. Rapp will argue that the appeal is not timely.

....

[MR. RAPP] *Judge, there's no error.* The order was file stamped July 24, 1991.

This is correct. There's no error to correct. *The order was properly entered.*

[THE COURT] Well, Mr. Rapp, it might be an error if it's not there though because when I look at the document then I agree with you....

[MR. RAPP] Well, he's wrong. He's wrong. All you got to do is pull out file 10 in the 87 case, and file 6 in the 1990 case and you'll see he's wrong.

[THE COURT] It's in there?

[MR. RAPP] It's in there.

....

[MR. PARTINGTON] Now if this thing is in the file, it's gotten in the file very mysteriously in the last few months, but it's still not on the docket sheet.

....

[THE COURT] Things can mysteriously appear in files, but very difficult to appear on the index though, not impossible. Gentlemen, I do need to look at the volumes cited by counsel. I need to look whether or not it's in the file.

(Emphasis added).

Throughout the court's and opposing counsel's obvious mystification, Mr. Rapp did not disclose that he knew the order had not previously been entered into the record or that the only reason it was now there was because he had caused it to be. Knowing full well that there had been an error insofar as the order had not been entered into the record, he stated to the judge, "Judge, there's no error.... The order was properly entered." Moreover, he did nothing to disabuse the court's concurrence with him that, because the order was file stamped July 24, 1991, if it was in the record, appellate jurisdiction would be properly defeated as untimely. The court took the matter under advisement until it could verify the record.

On August 11, 1992, the court once again heard oral argument on the same motion:

[THE COURT] It appears very clear to this Court, though, that when this matter came on for hearing or at least when this matter was up on appeal before the Supreme Court this Court's order of the 24th of July of 1991 was not in the file nor was it reflected in the index. It appears after the dismissal of the appeal that this order somehow made its way into the file.

[MR. PARTINGTON] We are told by the clerks your Honor, that apparently Mr. Rapp brought it to the Clerk's Office on the 16th of June [1992].... I think there are serious ethical questions involving what was done here....

[THE COURT] Counsel, I'm not in a position to pursue the question of ethical violation.

[MR. PARTINGTON] We would ask that sanctions be imposed in view of my concern at Mr. Rapp's apparent deliberate misrepresentation to the Court last time. Mr. Rapp knew the issue was was this order in the record, and if so, when did it get in the record? From what we have learned from the Clerk's Office, he put it there on the 16th of June, 1992 and yet led this Court to believe this order was not only in the record but in fact had been there all along.

[THE COURT] Thank you. Mr. Rapp?

....

[MR. RAPP] What the Court should do under these circumstances.... There is no question ... [that] the order was sent to the Court and you signed it, and the order was sent down to the Clerk's Office, and it was file stamped July 24, 1991. And we have, we have had some statements without really a foundation by Mr. Partington.... Now he's saying that this order was not entered into the file.... In *Schwartz* there was an amended complaint that had been submitted to the Court, the Court accepted it, but somehow it did not get into the file folder, but it was clear, just as it's clear here, that the order was ... actually submitted.... Under those circumstances the proper thing to do is to order that it's filed nunc pro tunc back on the original date ..., July 24, 1991.... Now Mr. Partington .... had his remedies.

[MR. PARTINGTON] Your Honor, I have a request that we be permitted to make a record by calling Mr. Rapp as a witness.... [H]e's attempting to perpe-

trate a fraud upon the court and the other parties by slipping this matter in. . . .

[THE COURT] Well, in any case, Mr. Rapp, was this order placed in the file the 16th of [June]?

[MR. RAPP] *I have no direct hand knowledge.* I will be glad to tell you Honor what happened. . . . I never had the original, but I had a file-stamped copy. . . . I· don't know where he gets off saying I went down to the clerk. *I did not induce the clerk to do anything.* I never talked to the clerk.

[THE COURT] Mr. Rapp, did anyone from your office go down there?

[MR. RAPP] Yes, I sent somebody from my office down with . . . a handwritten note and a copy of the order, and the note · said "attached is an original file stamped July 24 which for unknown reasons not contained in the original Court files. . . . Can something be done to set things straight?" And there is nothing wrong with me sending a note to the clerk.

(Emphasis added).

Mr. Partington informed the court that the documents clerk had indicated that she would testify, but only if subpoenaed. Mr. Partington requested that the court hear the clerk's testimony in order to examine the extent of Mr. Rapp's alleged misconduct. The court, however, voided the July 24, 1991 order, entered a new order dated August 13, 1992, made no further inquiry into the alleged ethical violations, and denied Mr. Partington's motion for sanctions and attorney's fees. On appeal, without analysis, the ICA affirmed the circuit court's denial of attorney's fees and sanctions.

We granted certiorari to review the issue of attorney's fees and sanctions in connection with the events surrounding the July 24, 1991 order. Mr. Rapp filed a supplemental brief wherein he contends that his conduct did not warrant the imposition ·of attorney's fees or sanctions because:

A. John Rapp was not wrong to have his secretary ask the clerk what could be done about the missing order; John Rapp promptly disclosed the order

and made no false statements at any time.

B. References to Mr. Partington's own statements in oral argument are not proper support on appeal.

C. There is no basis to reverse the rulings of the two lower courts.

## II. *STANDARD OF REVIEW*

■ We review the grant or denial of attorney's fees and/or sanctions for abusive litigation practices under the abuse of discretion standard. *Enos v. Pacific Transfer & Warehouse, Inc.,* 79 Hawai'i 452, 459 n. 7, 903 P.2d 1273, 1280 n. 7 (1995); *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc.,* 6 Haw.App. 431, 436, 726 P.2d 268, 271 (1986).

■ In this case, it appears that the circuit court concluded that it was without jurisdiction to entertain the motion for sanctions. The existence of jurisdiction is a question of law that we review *de novo* under the right/ wrong standard. · *State ex. rel. Bronster v. Yoshina,* 84 Hawai'i 179, 183, 932 P.2d 316, 320 (1997).

## III. *DISCUSSION*

### A. *Attorney's Fees*

On the facts before us, it appears that the court believed that opposing counsel was moving the court to make a finding regarding an ethical violation. The court responded, "Counsel, I'm not in a position to pursue the question of ethical violation." Insofar as the circuit court is neither the Supreme Court nor the ODC, it is true that it is without jurisdiction to make findings regarding ethical violations. However, it appears from the record that opposing counsel was arguing that Mr. Rapp should be held responsible to the opposing party for his alleged abusive litigation practices.

■ It is within a court's inherent power to award attorney's fees as a sanction for abusive litigation practices. *Enos,* 79 Hawai'i at 458, 903 P.2d at 1279; *Kukui Nuts,* 6 Haw.App. at 436, 726 P.2d at 272. "A finding that counsel's conduct constituted or was tantamount to bad faith [is] a necessary precedent to any sanction of attorney's fees under

the court's inherent powers." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980)).

■ The record clearly demonstrates that Mr. Rapp misrepresented the facts to the court. In the second hearing, he acknowledged that there was a clerical error and that he sent his secretary to the clerk to see if anything could be done to correct that error. However, in the first hearing, he insisted that "there is no error," all the while knowing full well that there was. If Mr. Rapp had correctly and candidly informed the court of his involvement in the order having been placed in the file, the second hearing would have probably been entirely unnecessary, and opposing counsel's clients would not have incurred the additional attorney's fees.

Nevertheless, having been fully apprised at the second hearing as to what actually occurred, the court apparently believed that it was without authority to sanction Mr. Rapp. The court, however, under its inherent power was authorized to determine whether Mr. Rapp acted in bad faith and, if so, whether his conduct resulted in the unnecessary incurrence of attorney's fees. *Enos*, 79 Hawai'i at 458, 903 P.2d at 1279.

Accordingly, we remand this matter to the circuit court for a specific determination of whether, in the court's discretion, a sanction of attorney's fees is warranted, and, if so, for the imposition of reasonable attorney's fees.

### B. *Referral to the ODC*

The Hawai'i Code of Professional Responsibility (the Code) was in effect at the time of Mr. Rapp's alleged professional misconduct. Disciplinary Rule (DR) 1–102(A)(4)[1] of the Code provided in part that "[a] lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." DR 7–102 required that, in representing a client, a lawyer shall not "[c]onceal or know-

ingly fail to disclose that which he is required by law to reveal[, or] knowingly make a false statement of law or fact[,or][c]ounsel in or assist his [or her] client in conduct that the lawyer knows to be illegal or fraudulent."[2] DR 7–102(A)(3), (5), & (7).

Because Mr. Rapp appears to have engaged in conduct that does not comport with provisions governing professional conduct, we are compelled to refer this matter to ODC for its review and any appropriate action. *See Lee v. Aiu*, 85 Hawai'i 19, 936 P.2d 655 (1997); *Bettencourt v. Bettencourt*, 80 Hawai'i 225, 909 P.2d 553 (1995).

### IV. *CONCLUSION*

For the reasons set forth above: (1) we remand this matter to the circuit court for a specific determination of whether, in the court's discretion, a sanction of attorney's fees is warranted, and, if so, for the imposition of reasonable attorney's fees against Mr. Rapp; and (2) because Mr. Rapp may have engaged in conduct that does not comport with the provisions governing professional conduct, we refer this matter to ODC for its review and any appropriate action. We direct the Clerk of the Supreme Court to transmit a certified copy of this opinion to ODC. We further direct all clerks of the several courts of this state to make available the records of the aforementioned cases for the ODC's review and to provide certified copies, at no additional cost, of any documents requested by the ODC in connection with its investigation of this matter.

---

1. The new counterpart of DR 1–102(A) in the Hawai'i Rules of Professional Conduct (HRPC) is almost identical. HRPC Rule 8.4 provides in part that "[i]t is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]"

2. HRPC Rule 3.3(a) provides in relevant part that "[a] lawyer shall not knowingly: ... (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a ... fraudulent act by the client[.]"