**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000565
24-MAY-2022
07:52 AM
Dkt. 96 SO**

NO. CAAP-20-0000565

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
LOGOVII TALO, Defendant-Appellee, and
JASON M. KRAMBERG, Real Party in Interest-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1PC161000667)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding J., Hiraoka, J.; and
Circuit Court Judge Ashford, in place of Ginoza, C.J.,
and Wadsworth, Nakasone and McCullen, JJ., all recused)

Real Party In Interest-Appellant Deputy Public Defender Jason M. Kramberg (**Kramberg**) appeals from the August 14, 2020 Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)], and Order of Sanction Against Jason Kramberg, Esq. (**Sanction Order**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]

Kramberg raises a single point of error on appeal, contending that the Circuit Court abused its discretion in imposing sanctions against Kramberg; Kramberg challenges FOFs 2-10 as clearly erroneous and COLs 2-4 as wrong.

_____

[1]     The Honorable Karen T. Nakasone presided.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Kramberg's point of error as follows:

Kramberg argues that the Circuit Court abused its discretion in invoking its inherent powers under Hawaii Revised Statutes (**HRS**) § 603-21.9 (2016) to impose sanctions against Kramberg where he did not act in "bad faith."

Pursuant to HRS § 603-21.9, the circuit court has the power to, *inter alia*:

> (6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

HRS § 603-21.9 "is a legislative restatement of the inherent powers doctrine." Kaina v. Gellman, 119 Hawaiʻi 324, 331, 197 P.3d 776, 783 (App. 2008) (citations omitted). Courts have "inherent power to curb abuses and promote a fair process." Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 458, 903 P.2d 1273, 1279 (1995) (citation omitted). However, "a court's inherent power, [] should be exercised with restraint and discretion." Id. (citation omitted).

A circuit court invoking its powers to sanction an attorney must: (1) identify the appropriate sanctioning authority; and (2) set forth specific findings of perceived misconduct, *i.e.,* bad faith, with reasonable specificity. Id. 79

Hawaiʻi at 459, 903 P.2d at 1280 ("[A]n order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority[.]"); see also Bank of Haw. v. Kunimoto, 91 Hawaiʻi 397, 389, 984 P.2d 1198, 1215 (1999) ("It is well settled that a court may not invoke its inherent powers to sanction an attorney without a specific finding of bad faith."). The record must support a finding of bad faith by clear and convincing evidence. Erum v. Llego, 147 Hawaiʻi 368, 393, 465 P.3d 815, 840 (2020); Kunimoto, 91 Hawaiʻi at 390, 984 P.2d at 1216 (determining circuit court's bad faith findings were supported by clear and convincing evidence in the record).

The sanctioning order does not need to expressly use the words "bad faith," but "the court must make findings tantamount to a specific finding of bad faith, *i.e.*, findings that are sufficient to enable the appellate court to infer a specific finding of bad faith by the circuit court." Sandomire v. Brown, 144 Hawaiʻi 314, 331, 439 P.3d 266, 283 (App. 2019) (internal quotation marks and brackets omitted).

In analyzing the imposition of sanctions, the supreme court reasoned that:

> [s]anctions are not to be assessed without full and fair consideration by the court. They often entail a fine which may have more than a token effect upon an attorney's resources. More importantly, they act as a symbolic statement about the quality and integrity of an attorney's work – a statement which may have tangible effect upon the attorney's career.

Enos, 79 Hawaiʻi at 458, 903 P.2d at 1279 (citation omitted). It has been noted, however:

> These concerns are balanced with our observation that
>
> > lawyers who know how to think but have not learned how to behave are a menace and a liability to the administration of justice. The necessity for civility is relevant to lawyers because they are living exemplars - and thus teachers - every day in every case and in every court; and their worst conduct will be emulated more readily than their best.

Id. (citation, brackets and ellipses omitted).

Kramberg first argues that the Circuit Court erred in relying on the Guidelines of Professional Courtesy and Civility for Hawaiʻi Lawyers (**Guidelines**) as a basis for imposing sanctions although they are not mandatory rules of professional conduct and are only offered as guidance. However, Kramberg cites no legal authority prohibiting a court from citing the Guidelines to *support* a particular proposition. We note that the supreme court has previously cited to the Guidelines to support propositions regarding sanctions. Erum, 147 Hawaiʻi at 393 n.46, 465 P.3d at 840 n.46. Although the Guidelines provide that they should not be used as an independent basis for disciplinary charges or claims of professional negligence, the Guidelines also expressly provide that a court may reference them. See Guidelines Preamble (2018).

Here, in COL 3, after citing the Hawaiʻi Rules of Professional Conduct (**HRPC**), the Circuit Court referenced the Guidelines using a "see also" reference, in support of its

conclusion that Kramberg's unprofessional conduct failed to comport with ethical standards for arguments to a tribunal, and behavior toward the court. We conclude that the Circuit Court did not err in referencing the Guidelines in this manner.

Kramberg further argues that the Circuit Court abused its discretion because he did not act in bad faith. More specifically, Kramberg submits that he did not engage in "opportunistic and unprofessional argument" by bringing up Talo's health condition only after the Circuit Court began to sentence Talo to prison.

However, conduct that violates the HRPC may constitute bad faith and warrant the imposition of sanctions. See Kunimoto, 91 Hawaiʻi at 392, 984 P.2d at 1218 (determining conduct that failed to comply with HRPC warranted sanctions). The Preamble of the HRPC, which was cited by the Circuit Court, includes, *inter alia*:

> [5] . . . A lawyer should demonstrate respect for the legal system and for those who serve it, including judges. . .
>
> . . . .
>
> [9] In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest[.] . . . These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system.

HRPC Rule 3.1, which was also cited by the Circuit Court, provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

At a June 18, 2020 resentencing hearing, Kramberg interrupted the court in the middle of its ruling. Kramberg interrupted the court after the court explained that probation would not be "an adequate deterrent" and that the nature of the probation violation in combination with the underlying conviction favored a prison term. Kramberg then proceeded to argue that sentencing Talo to prison was tantamount to sentencing him to die; and when the court rejected his argument, Kramberg said that the court's actions were outrageous, reiterated that the court was sentencing the defendant to die, and persisted in arguing with the judge. As reflected in the transcript of the June 18, 2020 hearing, and as set forth in FOF 2:

> THE COURT: . . . So when I look at the underlying offense of a violent assault in the second degree, combined with the nature of this particular probation violation, the court's finding is that this particular weighing does militate in favor of a prison term.
>
> . . . .
>
> So for all of these reasons, it is the judgment and sentence of this court that [Talo] be committed to the custody --
>
> MR. KRAMBERG: **Excuse me, Your Honor**.
>
> THE COURT: -- and care --

MR. KRAMBERG:  Before you finish that sentence, **I'm not sure if I placed on the record about Mr. Talo's medical condition in terms of he does suffer from gout, he is overweight, and he does have a pre -- and diabetes**.

So, essentially, by sentencing him to imprisonment with the corona virus, Mr. Talo is at very high risk of death if it is to enter our prison system.  **So I would ask the court to also consider that as a factor in whether or not Mr. Talo deserves to die for the alleged violation**, which is not supported by any direct testimony.

THE COURT:  **You gotta stand when you talk, Mr. Kramberg.**[2]  And, Mr. Kramberg, the court's sentence is based on the court's considered -- you know, **I take exception to you saying that I am sentencing him to die, which I am not**.

MR. KRAMBERG:  **I respectfully disagree**.  The high possibility that people die in prison based on his health condition.  So I would before -- I would ask that mittimus be delayed.  We do intend to appeal.  He is already out on a hundred thousand dollars bond.  He's shown that he's compliant.  I would ask that the bond be allowed to continue while we pursue an appeal in this case.  Especially, considering the fact at this time we're trying to reduce populations of our prisons, especially the vulnerable inmates with pre-existing health conditions.

THE COURT:  **Okay.  You cut me off before I was gonna finish the sentence.**

MR. KRAMBERG:  I apologize.

THE COURT:  The judgment and sentence of this court that [Talo] be committed to the custody and care of the Director of the Department of Public Safety for a term of imprisonment of five years and [Talo] to receive any credit time served.

Defense has made additional argument regarding COVID-19 and [Talo's] alleged medical condition.  And you are requesting delay of the mittimus?

MR. KRAMBERG:  Yes, Your Honor.

. . . .

THE COURT:  I don't know that I can do that, because I think that if he's convicted of a fel -- if it's a felony and the sentence is imprisonment, I don't know that the law allows a stay pending appeal.

MR. KRAMBERG:  I believe it does, Your Honor.

---

[2]  While the Circuit Court did not sanction Kramberg for failing to rise to his feet before making this argument, this lack of decorum by an experienced courtroom attorney, combined with his interruption of the court midsentence, is palpably discourteous and disrespectful.

. . . .

THE COURT:  And the court took a recess to look at the bail statute, and I have done that.  804-4 talks about when a defendant is entitled to bail as a matter of right.

Subsection (a)(2) says no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed.

MR. KRAMBERG:  And it goes on.  To read -- please continue reading, Your Honor.  There are certain exceptions to that.

. . . .

THE COURT:  I don't agree with you.  I think -- I'm looking at subsection (2), no bail shall be -- I mean, he falls into subsection (2).

MR. KRAMBERG:  And.

THE COURT:  And it goes on to list additional situations where no bail is allowed.

. . . .

MR. KRAMBERG:  Essentially, what I'm saying is I would like the mitt to be postponed so I can file a notice of appeal and then be asking that bail be continued. . . .

THE COURT:  The court's -- okay.  My decision on your request is based on my reading of 804-4 subsection (2), the court interprets this statute to not allow bail in this situation because the court has imposed a sentence of imprisonment.  So your request, Mr. Kramberg, is denied.  And --

MR. KRAMBERG:  Would it -- would it then be in effect if I file an appeal?  Would -- would the court then find that that exception applies?

THE COURT:  I don't know that the defendant would meet the criteria.  Subsection (b), I don't think it applies.  So that's why I disagree with you, and I'm gonna impose -- I mean, I'm gonna order the mittimus to issue forthwith and I'm finding it does not apply.

MR. KRAMBERG:  **That's outrageous, Your Honor.**

THE COURT:  **It is not outrageous.  It's outrageous that you tell me that I'm sentencing this defendant to --**

MR. KRAMBERG:  To prison.

THE COURT:  -- to death.

MR. KRAMBERG:  You are.

THE COURT: No, you said that I am sentencing him to die. I am not. I am imposing a prison term in accordance with the law.

. . . .

THE COURT: The court has ruled on the sentence and I've explained the reasons where I came out on that sentence. Okay? So you are free to take a -- take up an appeal, whatever remedy your lawyer and you decide you want to take. But I have ruled and I've made the sentence, and I'm ordering mittimus to issue forthwith and [Talo] to get credit for any time served.

MR. KRAMBERG: **What -- what reason do we have to issue the mittimus right away? Why can't it be delayed for me to simply file a notice of appeal? What is the urgency? When the court has already had Mr. Talo out since February?**

THE COURT: Mr. Kramberg.

MR. KRAMBERG: Yes, Your Honor.

THE COURT: **I've ruled. You file whatever you need to file. I have ruled.**

MR. KRAMBERG: **I would just -- my point of arguing is to --**

THE COURT: **I've heard your argument. You cannot keep arguing with the Judge after the Judge has ruled.**

(Some emphasis added).

Prior to sanctioning Kramberg, the Circuit Court issued an order to show cause (**OSC**) why Kramberg should not be sanctioned for his unprofessional conduct, giving him an opportunity to file a written response, and directing him to appear at a hearing to show why he should not be sanctioned. In addition to noting his conduct at the June 18, 2020 resentencing hearing, in the OSC, the Circuit Court took judicial notice of prior instances in which the court issued OSCs to Kramberg for unprofessional conduct, but took "no further action" on possible sanctions after hearing Kramberg's apology and explanation, and instead cautioned Kramberg.

9

At the August 5, 2020 hearing on the OSC, Kramberg did apologize to the Circuit Court, but his primary arguments against a sanction was that he expected the court to re-sentence Talo to probation, not to prison, and he was frustrated. Kramberg argued that he never "specifically said" the court was sentencing Talo to die, minimizing the clear implication of his words and the accusatory and unprofessional manner in which he used them. Kramberg contended that his argument at the resentencing hearing was not made in bad faith. At the conclusion of the hearing, the Circuit Court orally imposed a $50 sanction against Kramberg. The Sanction Order was issued thereafter. Kramberg challenges the following FOFs and COLs:

> 2. At the probation revocation and resentencing in the above-entitled case on 6/18/20, after the Court had already found [Talo] committed a probation violation for possessing a shotgun and ammunition in his bedroom, [Kramberg] engaged in unprofessional conduct by making disrespectful arguments, refusing to acknowledge the court's ruling, and displaying disrespectful conduct toward the court, as shown in the following record:
> [Excerpts from the transcript of the June 18, 2020 resentencing hearing, quoted in part above.]
>
> . . . .
>
> 3. Counsel's argument that the Court should consider whether [Talo] "***deserves to die*** for the alleged violation" and that the court was sentencing [Talo] to death, was offensive and disrespectful. (6/18/20 TR: 30-31, 37).
>
> 4. Counsel's argument that the Court was sentencing [Talo] "to die", was disruptive and disrespectful, because it had not been supported by any timely argument or evidence regarding the COVID-19 pandemic, [Talo]'s health conditions and/or risk of death, prior to the Court's imposition of the sentence, but was rather sprung on the Court last-minute. Counsel also interrupted the Court mid-sentence as the Court attempted to impose a prison term.
>
> 5. This argument regarding whether [Talo] "deserves to die for the ***alleged*** violation" was also disrespectful, because it refused to acknowledge the Court's finding of

probation violation, which [Kramberg] was still characterizing as an **"*alleged violation, which was not supported by any direct testimony*."** (Id.: 30). The Court had already found a probation violation supported by a comprehensive evidentiary record, testimony by numerous witnesses, and had made detailed findings regarding the probation violation. (See id.: 10-14).

6.    [Kramberg] further engaged in unprofessional and disrespectful conduct towards a tribunal, by persisting in arguing with the Court after the Court had already imposed sentence and denied the request to stay the mittimus, and by declaring that the Court's ruling was "outrageous." (6/18/20 TR: 31-39).

7.    [Kramberg]'s prior 2019 OSC in the Liftee case referenced supra, is an aggravating factor militating in favor of sanctions. In the Liftee case, [Kramberg] engaged in gamesmanship by making a last-ditch motion for fitness examination without a good-faith basis. [Kramberg] said his motion for a fitness examination was contingent upon whether this Court would impose a prison term, yet he simultaneously argued that he would be withdrawing the motion for fitness examination if this Court imposed a probation term instead of prison. (See 8/15/19 TR at 4-7, attached as Exhibit "A" in the 2019 OSC). [Kramberg] lacked a good-faith basis to request a fitness examination unde HRS § 704-404. Avoidance of a prison term was not a good-faith basis to move for a fitness examination.

8.    At the 12/12/19 hearing on the 2019 OSC, this Court issued a caution to [Kramberg] in open court, instead of a sanction, and took "No Further Action", after consideration of [Kramberg]'s written response and presentation at the hearing.

9.    The record in this establishes a similar pattern to that in the 2019 OSC, of [Kramberg]'s unscrupulous resort to unprofessional argument and/or questionable tactics, to avoid a prison sentence for a client.

10.    In light of this Court's leniency shown to [Kramberg] at the 2019 OSC, and a similar pattern of conduct occurring again in the current OSC proceeding, sanctions are now warranted for this repeated conduct.

. . . .

[COL] 2.    The unprofessional conduct in the findings described above, undermines this Court's judicial power and authority to administer and promote justice. See HRS § 603-21.9.

3.    The unprofessional conduct supra, also fails to comport with ethical standards for arguments to a tribunal, and behavior toward the court. See Hawaiʻi Rules of Professional Conduct (HRPC) Rule 3.1 . . . ; HRPC Preamble paragraph 5 . . .; HRPC Preamble paragraph 9 . . .; see also Guidelines of Professional Courtesy and Civility for Hawaiʻi Lawyers, SCRU-17-651, Section 12(b) . . . .

11

> 4. This Court concludes that a monetary sanction is appropriate, and imposes a $50.00 sanction on [Kramberg]. A low sanction amount was imposed, solely out of consideration of the nature of [Kramberg]'s public service employment, and is not reflective of the seriousness of [Kramberg]'s conduct, for which a more substantial sanction would otherwise be appropriate.

(footnotes omitted).

We conclude that the Circuit Court's FOFs are supported by the record of these proceedings and are not clearly erroneous. We reject Kramberg's argument that the prior instances in which the Circuit Court issued OSCs to Kramberg should not have been considered because they involved "dilatory conduct," rather than the type of conduct at issue here. See generally Off. of Disciplinary Couns. v. Breiner, 89 Hawaiʻi 167, 174-76, 969 P.2d 1285, 1292-94 (1999) (suspending attorney's license for making argumentative and disrespectful comments to the court). In addition, we conclude that the Circuit Court's FOFs are tantamount to a finding of bad faith, and are sufficient to support the imposition of a sanction. See Kunimoto, 91 Hawaiʻi at 392, 984 P.2d at 1218; Sandomire, 144 Hawaiʻi at 331, 439 P.3d at 283. Finally, we conclude that the Circuit Court's COLs are supported by the court's FOFs and reflect an application of the correct rule of law.

For these reasons, the Circuit Court's August 14, 2020 Sanction Order is affirmed.

DATED: Honolulu, Hawaiʻi, May 24, 2022.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Real Party In Interest-
 Appellant.

Patricia Ohara,
Robyn B. Chun,
Lori N. Tanigawa,
Deputy Attorneys General,
for The Honorable Karen T. Nakasone.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ James H. Ashford
Circuit Court Judge