***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-16-0000235
10-MAR-2020
11:33 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP, also known as
KAMEHAMEHA SCHOOLS, Respondents/Plaintiffs-Counterclaim
Defendants-Appellees,

vs.

RONALD G.S. AU, Petitioner/Defendant-Counterclaimant-Appellant.

SCWC-16-0000235

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000235; CIV. NO. 13-1-0420)

MARCH 10, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

Chapter 634J of the Hawai'i Revised Statutes authorizes a court to enter an order declaring a plaintiff to be a vexatious litigant in particularly defined circumstances. The circuit court in this case determined that the defendant qualified as a "plaintiff" for the purpose of the vexatious litigant statute and that the required circumstances were

demonstrated. The Intermediate Court of Appeals affirmed the circuit court's ruling.

Upon review of the vexatious litigant statute and its legislative history, we hold that the circuit court and Intermediate Court of Appeals erred in determining that the defendant in this case qualified as a "plaintiff" and that other requirements set forth in the statute were satisfied. We also hold that a court's vexatious litigant determination must be supported by findings that set forth, with reasonable specificity, the perceived misconduct, including a finding of bad faith when applicable. Finally, we conclude that the record does not show that the motions underlying the vexatious litigant order in this case were made in bad faith.

## I. BACKGROUND

On June 17, 1970, the Trustees of the Estate of Bernice Pauahi Bishop (Bishop Estate) leased a parcel of land located in Honolulu, Hawai'i (the property), to Kam Wo Wong and Lillie Choy Wong as joint tenants for a period of 53 years and 9 months. On June 1, 1978, the Wongs assigned their interest in the lease to Ronald G.S. Au. In 2010, Bishop Estate filed a complaint against Au alleging he had breached the lease agreement and seeking damages and possession of the property. Au counterclaimed, alleging, inter alia, that Bishop Estate had

breached the lease agreement and was engaging in retaliatory eviction. The parties entered into a settlement agreement on August 24, 2012 (settlement agreement). By the terms of the settlement agreement, Au had until a date certain to pay lease payments owed to Bishop Estate in the principal amount of $62,000.

On February 13, 2013, Bishop Estate filed a complaint against Au in the Circuit Court of the First Circuit (circuit court),[1] alleging that Au had breached the settlement agreement by failing to make the required payment by December 31, 2012, and that Au's breach entitled Bishop Estate to damages, termination of the lease, and possession of the property. On August 2, 2013, Au, proceeding pro se, filed a counterclaim, and later a first amended counterclaim, which included claims that Bishop Estate had breached the lease and the settlement agreement by unreasonably withholding permission to allow him to assign one-half of his lease interest to a third party (the lease interest), that the settlement agreement as written was void and unenforceable because the parties had agreed that the amount would be due December 31, 2013, not December 31, 2012, that Bishop Estate had tortiously interfered in Au's assignment

---

[1] The Honorable Rhonda A. Nishimura presided over the proceedings.

3

of the lease interest in the property to a third party, and that Bishop Estate had engaged in a retaliatory eviction.

On June 6, 2013, Bishop Estate moved for summary judgment of the claims in its complaint, asserting that it was entitled to immediate termination of the lease and repossession of the property based on Au's failure to comply with the terms of the settlement agreement. Au opposed the motion, arguing that his failure to make payment on December 31, 2012, was due to Bishop Estate tortiously interfering in his assignment of the lease interest and that payment was actually due on December 31, 2013. The circuit court granted Bishop Estate's motion for summary judgment and entered an order on September 18, 2013, terminating the lease and awarding Bishop Estate damages in the amount of $130,735.40 and possession of the property (summary judgment order).

On September 25, 2013, Au filed a motion for reconsideration of the summary judgment order (motion for reconsideration), arguing the court had not considered the claims and affirmative defenses in his counterclaim, specifically his claim of retaliatory eviction, and that if it had, summary judgment would not have been granted in Bishop Estate's favor. In response, Bishop Estate asserted that each argument in the motion for reconsideration had either been

4

raised in Au's opposition to the motion for summary judgment or was untimely and therefore waived. The court denied the motion for reconsideration on April 30, 2014, stating its decision was based on its review of the record and "good cause."

On March 12, 2015, Bishop Estate filed a motion for summary judgment on Au's first amended counterclaim, arguing it had not breached the lease by withholding consent to assignment of Au's lease interest because it had an unqualified right to withhold consent, and thus it could not have tortiously interfered with Au's assignment of the lease interest or unreasonably withheld consent. In opposition, Au maintained that Bishop Estate had fraudulently induced his assent to the settlement agreement, had breached the lease by refusing to permit assignment of his interest in the lease, and had violated statutory provisions proscribing unfair and deceptive business practices. At the April 16, 2015 hearing, the court orally granted the motion. In its written order, filed on May 18, 2015 (counterclaim summary judgment order), the court found that Au failed to submit evidence that the settlement agreement was obtained by fraud or that Bishop Estate had unreasonably withheld permission to assign Au's interest in the lease.

A month before the circuit court issued the counterclaim summary judgment order, Au filed a motion to vacate

or set aside the summary judgment order under Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) (Rule 60(b) motion to vacate).[2] Au contended that the $62,000 principal amount due under the settlement agreement was for real property taxes Bishop Estate had paid, which had been incorrectly calculated because Bishop Estate had failed to consider refunds Au had obtained through certain tax appeals. Bishop Estate countered that any argument as to the accuracy of the calculations should have been raised during earlier proceedings and was not a basis to reconsider the court's summary judgment order.

The circuit court denied Au's Rule 60(b) motion to vacate at a hearing held on May 13, 2015. In its oral ruling, the court indicated that Au's motion had been filed more than one year after the entry of the summary judgment order, but the court reviewed the merits of the motion, "notwithstanding the

---

[2] HRCP Rule 60(b) (2006) provides in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

6

timeliness issue as to when the motion could [or] should have been brought." The court found that Au's calculations were not reliable because he did not explain them or identify supporting sources, and that Au did not exercise appropriate diligence as he could have raised the issue earlier. The court's oral findings were set forth in a June 2, 2015 written order. However, two weeks before entry of the written order, Au filed a motion to reconsider the court's denial of his Rule 60(b) motion to vacate (renewed motion to vacate). Au proffered declarations from his accountant to substantiate his contention that the settlement agreement amount of $62,000 was incorrectly calculated and to demonstrate the reliability of his own calculations. Bishop Estate contended that the motion was untimely, the argument had been waived, and, in any event, Au's calculations remained inaccurate.

On May 29, 2015, again prior to the entry of the June 2, 2015 order, Au had filed a motion for reconsideration of the counterclaim summary judgment order (motion to reconsider CCSJ order). Au asserted that, because of his argument in the renewed motion to vacate that the settlement amount of $62,000 was based on erroneous calculations, vacatur of the summary judgment order entered in favor of Bishop Estate would also

7

permit reconsideration of the counterclaim summary judgment order.

The court entered final judgment on June 12, 2015. The final judgment terminated Au's interest in the property, returned possession of the property to Bishop Estate, and awarded a monetary judgment against Au in the amount of $130,735.40.

On June 16, 2015, Au filed a notice of appeal.[3] On that same day, the court issued an order denying Au's renewed motion to vacate, summarily ruling that its decision was based on its review of the motion, memoranda, declarations, and exhibits filed in support of and in opposition to the motion. Two days later, the court by minute order denied Au's motion to reconsider CCSJ order. A written order denying the motion was entered on August 19, 2015, again stating only that the decision was based on the court's review of the record.[4]

On June 29, 2015, Au filed a motion to vacate the final judgment (motion to vacate final judgment). Au maintained

---

[3] This appeal was heard by the Intermediate Court of Appeals (ICA) in CAAP-15-466. In an amended summary disposition order entered on December 22, 2017, the ICA affirmed the circuit court's final judgment and award of attorneys' fees in favor of Bishop Estate.

[4] On June 26, 2015, Bishop Estate filed a motion for the award of costs and a motion for an award of attorneys' fees, which Au opposed. On August 14, 2015, the circuit court granted in part and denied in part these motions.

that the final judgment was premature because it was entered before the court's denial of his renewed motion to vacate and the motion to reconsider CCSJ order.  Since these motions were still pending at the time the court entered final judgment, Au contended the judgment could not have been a final, appealable judgment because the motions presented unresolved, non-collateral issues.  Au contended that because the judgment had not resolved all issues in the case, his notice of appeal filed on June 16, 2015, would be dismissed as premature.  Bishop Estate responded that the court was not required to rule on Au's pending motions for reconsideration before entering final judgment.[5]  On August 26, 2015, the court issued an order denying Au's motion.

On August 25, 2015, prior to the court's denial of his motion to vacate final judgment, Au filed a motion for correction, modification, or relief from judgment under HRCP Rule 60(b) (motion for correction).  Au reiterated his argument that the entry of final judgment was premature and asked that the court vacate the final judgment of June 12, 2015, and enter the August 19, 2015 order in which the court denied Au's motion

_____

[5]  Bishop Estate argued that, to the extent Au's pending motions were prejudgment motions, the entry of judgment constituted a denial of those motions, and to the extent the motions were post-judgment motions, the court was not required to rule on them before entry of judgment.

9

to reconsider CCSJ order as a final order.  Au contended this was necessary for him to properly appeal the court's denial of his motion.  Bishop Estate responded that the court was not required to rule on the motion to reconsider CCSJ before entry of final judgment in order for Au to appeal its denial.  Bishop Estate also asked the court to declare Au a vexatious litigant pursuant to Hawai'i Revised Statutes (HRS) § 634J-7.[6]  Bishop Estate stated that its request was based on Au's repeated assertion of previously decided arguments, particularly his contention that the amount owed under the settlement agreement was incorrectly calculated.  During the hearing on September 18, 2015, Au withdrew his motion for correction.  The court minutes do not reflect a ruling on Bishop Estate's request that Au be deemed a vexatious litigant.

On December 17, 2015, Au filed a motion to stay enforcement of the final judgment pending determination of the amount of a supersedeas bond (motion to stay).  Au argued that

---

[6]     HRS § 634J-7 (1993) provides in relevant part as follows:

> [T]he court, on its own motion or the motion of any party, may enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this State on the litigant's own behalf without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of this order by a vexatious litigant may be punished as a contempt of court.

the amount of the supersedeas bond should not be set by the amount set forth in the final judgment because certain attorneys' fees had erroneously been awarded because of the pending appeal of the amount calculated to be owed under the settlement agreement. Bishop Estate argued in response that Au was attempting to relitigate the amount owed under the settlement agreement and the amount of attorneys' fees awarded. In a subsequent motion, Au proffered a lien on certain real property owned by Au and his wife as an alternative to posting a bond.

Before the hearing on these motions, Bishop Estate filed a motion to declare Au a vexatious litigant under HRS § 634J-1(2) and (3) based on Au's repeated assertion of arguments that Bishop Estate contended were already resolved. Bishop Estate identified seven motions filed by Au that it maintained were attempts to relitigate already resolved issues.[7] Au argued in opposition that he, as a defendant in the action, could not be declared a vexatious litigant and that in any event his motions had never been determined to be frivolous or made in bad faith. Au asserted that Bishop Estate's motion was intended

---

[7] The seven motions identified by Bishop Estate were Au's (1) motion for reconsideration; (2) Rule 60(b) motion to vacate; (3) renewed motion to vacate; (4) motion to reconsider CCSJ order; (5) motion to vacate final judgment; (6) motion for correction; and (7) motion to stay.

only to harass him and asked that the court impose monetary sanctions against Bishop Estate under HRCP Rule 11. After hearing arguments, the court granted the motion, declaring Au a vexatious litigant.[8]

The circuit court thereafter issued a written order granting the motion (vexatious litigant order). The court concluded Au met HRS § 634J-1's definition of "plaintiff" because he had, through the seven identified motions, sought to relitigate the merits of the summary judgment order and thereby "maintained" the litigation. The court also found that because Au's multiple motions, which had all received adverse rulings, sought to relitigate the summary judgment order, Au met the definition of a vexatious litigant under either HRS § 634J-1(2) or (3).[9] Au filed an interlocutory appeal challenging the vexatious litigant order.

---

[8] Before ruling on the vexatious litigant motion, the court orally denied Au's motion to stay and motion to post supersedeas bond. The court later issued a written order denying the motions on the basis that Au had failed to demonstrate that his proffered alternative of a lien on real property was an adequate substitute for a bond.

[9] HRS § 634J-1(2) and (3) (1993) provide as follows:

"Vexatious litigant" means a plaintiff who does any of the following: . . .

(2) After litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in bad faith, either:

(continued. . .)

## II.  ICA PROCEEDINGS

In a Summary Disposition Order filed June 28, 2019, the ICA affirmed the circuit court's interpretation of HRS § 634J-1, holding that Au qualified as a "plaintiff" because he maintained the litigation through the numerous motions he filed in this case.[10]  The ICA also determined that Au met the definition of a vexatious litigant under HRS § 634J-1(2), concluding that Au sought to relitigate the merits of issues that the court had already resolved through his contention that the settlement amount was incorrectly calculated in the seven motions identified by Bishop Estate.[11]

---

(. . .continued)

> (A) The validity of the determination against the same defendant or defendants as to whom the litigation was finally determined; or
>
> (B) The cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined;
>
> (3) In any litigation while acting in propria persona, files, in bad faith, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay[.]

[10]  Additionally, the ICA observed in a footnote that "at least for the purposes of his counterclaims, Au is a plaintiff as he commenced or instituted those claims."

[11]  The ICA observed that it had recently held in CAAP-15-0000466 that Au knew or should have known about the incorrectly calculated amount at

(continued. . .)

13

The ICA held that the circuit court was not required to make a specific finding that any of Au's motions were made in bad faith and that bad faith could be inferred from Au's reassertion of the same argument in different motions.[12] Further, the ICA determined, HRS chapter 634J did not require specific findings of fact or conclusions of law to be made.

The ICA therefore concluded that the circuit court did not abuse its discretion in declaring Au a vexatious litigant and affirmed the vexatious litigant order.[13]

### III. STANDARDS OF REVIEW

The interpretation of a statute is a question of law reviewable de novo. Tax Found. v. State, 144 Hawai'i 175, 185, 439 P.3d 127, 137 (2019).

A vexatious litigant determination is reviewed under an abuse of discretion standard. Ek v. Boggs, 102 Hawai'i 289, 294, 75 P.3d 1180, 1185 (2003). "[A]n abuse of discretion

---

(. . .continued)

the time of the summary judgment motions and therefore it could not provide a basis for reconsideration under HRCP Rule 60(b).

[12] The ICA concluded that the circuit court was entitled to rely on a presumption of the correctness of its prior rulings, rejecting Au's argument that the court could not deem him a vexatious litigant on the basis of motions that had been appealed.

[13] The ICA found it unnecessary to determine whether Au met the definition under HRS § 634J-1(3).

occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (alterations in original) (quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 119, 58 P.3d 608, 630 (2002)).

## IV. DISCUSSION

### A. Au Does Not Meet the Definition of "Plaintiff" Under HRS § 634J-1.

HRS § 634J-7 empowers a court to enter a prefiling order prohibiting a vexatious litigant from filing any new litigation on the litigant's own behalf without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed.[14] As set forth by HRS § 634J-1, a "vexatious litigant" for purposes of HRS § 634J-7 must be a "plaintiff." HRS § 634J-1 defines "plaintiff" as "the person who commences, institutes or maintains litigation or causes it

---

[14] As stated, HRS § 634J-7 provides in relevant part as follows:

> [T]he court, on its own motion or the motion of any party, may enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this State on the litigant's own behalf without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of this order by a vexatious litigant may be punished as a contempt of court.

to be commenced, instituted, or maintained[.]"[15]  In this case, both the circuit court and the ICA determined that HRS § 634J-1 defined "plaintiff" so expansively that Au was a "plaintiff" for purposes of HRS § 634J-1--even though he was the defendant in the case--because he had, by filing the identified seven motions, caused the litigation to be maintained.

This court's construction of statutes is guided by well-settled principles.  See State v. Choy Foo, 142 Hawaiʻi 65, 72, 414 P.3d 117, 124 (2018); State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009).  We first examine the language of the statute itself.  Choy Foo, 142 Hawaiʻi at 72, 414 P.3d at 124.  If the language is plain and unambiguous, we must give effect to its plain and obvious meaning.  Id.  Also, implicit in statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself.  Id.  Finally, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.  Id.  When there is ambiguity, the

---

[15]     HRS § 634J-1 defines "Plaintiff" in full as follows:

"Plaintiff" means the person who commences, institutes or maintains litigation or causes it to be commenced, instituted, or maintained, including an attorney at law acting on the attorney's own behalf.

meaning of ambiguous words may be sought by examining the context or resorting to extrinsic aids to determine legislative intent. Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 194, 159 P.3d 143, 153 (2007).

The relevant language of HRS § 634J-1 states that "'plaintiff' means the person who commences, institutes or maintains litigation or causes it to be commenced, instituted, or maintained[.]" Looking solely to this language, it is not plain or unambiguous that the term "plaintiff" refers to any party, including a defendant, who maintains litigation by filing motions. Thus, the meaning of the term "plaintiff" is ambiguous as defined by HRS § 634J-1. It is therefore necessary to examine the context and extrinsic aids pertaining to the statute to determine whether the legislature intended the definition of "plaintiff" in HRS § 634J-1 to broadly encompass parties that maintain litigation by filing motions, as the circuit court and the ICA determined.

According to its legislative history, HRS chapter 634J was enacted in order to statutorily define "vexatious litigant" and to require plaintiffs falling within that definition to post security in cases where the court determines that the plaintiff is a vexatious litigant and there is no reasonable probability that the plaintiff will prevail. S. Stand. Comm. Rep. No. 467,

17

in 1993 Senate Journal, at 978.  The chapter's purpose was to reduce the number of frivolous cases being filed in the court system.  Id.  The bill was amended in the Senate "to clarify that the definition of vexatious litigant is limited to the plaintiff."  Id.  Similarly, the House Standing Committee Report recommended that the final language clarify that "a vexatious litigant is a person and a plaintiff" due to concern that the definition of a vexatious litigant could bar certain groups such as environmentalists or Native Hawaiians from filing legitimate claims.  H. Stand. Comm. Rep. No. 1178, in 1993 House Journal, at 1473.  The legislature's decision to limit the definition of a vexatious litigant to plaintiffs strongly indicates the legislature did not intend the definition of "plaintiff" to encompass all litigants, and particularly not defendants.

The context in which HRS § 634J-1 defines "plaintiff" is also instructive.  State v. Yokota, 143 Hawaiʻi 200, 205, 426 P.3d 424, 429 (2018) ("[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other.").  HRS § 634J-1 defines "defendant" as "a person (including a corporation, association, partnership, firm, or governmental entity) against whom litigation is brought or maintained, or sought to be brought or maintained."  (Emphasis added.)  The ICA concluded that a party is a "plaintiff" for

purposes of HRS § 634J-1 if that party maintains litigation by filing motions.[16] Since the definitions of "plaintiff" and "defendant" in HRS § 634J-1 are in pari materia, the meaning of "maintained" in HRS § 634J-1's definition of defendant must be in accordance with the meaning of "maintained" in HRS § 634J-1's definition of "plaintiff." Kam v. Noh, 70 Haw. 321, 325, 770 P.2d 414, 417 (1989) ("In the absence of an express intention to the contrary, words or phrases used in two or more sections of a statute are presumed to be used in the same sense throughout.").

Thus, because a defendant is defined as one against whom litigation is maintained, and, according to the ICA and the circuit court, litigation can be maintained by filing motions, then any party that files motions would become a "plaintiff" and any party against whom a motion is filed would become a "defendant." Under this interpretation, nearly all litigants would simultaneously satisfy HRS § 634J-1's definition of "plaintiff" and "defendant," eroding the distinction between "plaintiff" and "defendant" such that either term simply means "litigant." When the legislature uses different words in a statute, however, the different words are presumed to have different meanings. Agustin v. Dan Ostrow Constr. Co., 64 Haw.

---

[16] In reaching this conclusion, the ICA relied solely on the dictionary definition of "maintain" and did not consider the legislative history or the context of the statute.

80, 83, 636 P.2d 1348, 1351 (1981). The distinction within the statute, as well as the legislative history, therefore requires that we give different meanings to these different words and interpret "plaintiff" in a manner that is not so expansive as to swallow the distinction between plaintiffs and defendants, which the legislature explicitly sought to preserve.[17]

Based on the foregoing, we hold that HRS § 634J-1's definition of "plaintiff" does not encompass a litigant who maintains litigation by filing motions in the litigant's capacity as a defendant.[18] The ICA and the circuit court erred in ruling to the contrary.

## B. Au Also Would Not Meet the Definition of Vexatious Litigant Under HRS § 634J-1(2).

Even assuming Au had met the definition of "plaintiff" under HRS § 634J-1, he would not qualify as a "vexatious

---

[17] See also Standard Mgmt., Inc. v. Kekona, 98 Hawai'i 95, 105, 43 P.3d 232, 242 (App. 2001) (holding that trial court erred by expanding HRS § 634J-1's definition of "plaintiff" to include plaintiffs' counsel; stating that, "Under HRS § 634J-1, only a plaintiff may be deemed a vexatious litigant: 'Vexatious litigant means a plaintiff[.]'" (alteration in original)). The ICA in this case held that, "To the extent that the SMI court determined that a vexatious litigant cannot be a defendant, that determination was dicta."

[18] Although the ICA found that Au was a plaintiff for the purpose of his counterclaims, only one of the motions underlying the vexatious litigant order was filed by Au in his capacity as a counterclaimant, which indisputably was insufficient to support the order. It is thus unnecessary to decide whether a counterclaimant may qualify as a "plaintiff" under HRS § 634J-1.

litigant" under HRS § 634J-1(2).  This subsection defines a vexatious litigant as a plaintiff who

> [a]fter litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in bad faith, either:
>
> (A) The validity of the determination against the same defendant or defendants as to whom the litigation was finally determined; or
>
> (B) The cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined[.]

(Emphases added.)  In this case, the circuit court found that Au was a vexatious litigant by relying on subsection (2) or, in the alternative, subsection (3) of § 634J-1.  The ICA agreed that Au met the above definition of a vexatious litigant under subsection (2) and declined to consider whether Au met the definition under subsection (3).

Significantly, HRS § 634J-1(2) is limited in its application to plaintiffs who attempt to relitigate issues after they have been finally resolved.  Litigation is not finally resolved until appellate review of the proceeding is complete or the period in which the parties may seek review has expired. See, e.g., Catron v. Tokio Marine Mgmt., Inc., 90 Hawai'i 407, 412, 978 P.2d 845, 850 (1999) (observing that the case had not reached final resolution because appeals were pending); Silvestrone v. Edell, 721 So.2d 1173, 1175 n.2 (Fla. 1998) (holding that litigation is concluded upon expiration of time of

21

appeal or completion of appellate review for purposes of a statute of limitations for legal malpractice claims). This interpretation is consistent with the statute's overarching purpose of reducing the institution of frivolous cases seeking to relitigate matters that have been finally determined.

S. Stand. Comm. Rep. No. 467, at 978.

Here, the court's summary judgment order did not "finally resolve[]" the litigation against Au because either the time for filing a notice of appeal had not expired or appellate review had not been completed when Au filed the relevant motions.[19] Au could therefore not be deemed a vexatious litigant under HRS § 634J-1(2), even if he had been a "plaintiff." See Part IV.A. Accordingly, the ICA erred in concluding that the circuit court did not abuse its discretion when it determined that Au was a vexatious litigant under HRS § 634J-1(2).

---

[19] Because HRS § 634J-1(2) requires litigation to be finally resolved, the circuit court could not rely on a presumption of the correctness of its rulings as a basis for declaring Au a vexatious litigant under this subsection, as stated by the ICA.

### C. A Finding of Bad Faith Is Required in Order To Conclude a Litigant Is Vexatious Under HRS § 634J-1(2) or (3).

In addition, to meet the definition of a vexatious litigant under either HRS § 634J-1(2) or (3), the plaintiff must have acted in bad faith.  These subsections provide that a vexatious litigant is a plaintiff who

> (2) [a]fter litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in <u>bad faith</u>, either: . . . ;
>
> (3) [i]n any litigation while acting in propria persona, files, in <u>bad faith</u>, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay[.]

(Emphases added.)

The bad faith requirement was carefully considered by the legislature when HRS chapter 634J, "Vexatious Litigants," was being enacted.  A House Standing Committee Report indicates significant concern that plaintiffs would be deemed vexatious merely for filing motions that were repetitive.

> The testimony of the [Hawaiʻi State Bar Association] addressed the definition of the term "repeatedly" as used in Paragraphs [634J]-1(2) and (3) of the new chapter because it might unfairly bar meritorious claims under this proposed legislation.  <u>The HSBA was concerned that the term "repeatedly"</u> may be applied to plaintiffs who "repeatedly" relitigate two or three times or <u>plaintiffs who "repeatedly" file motions, pleadings, or other papers that appear unmeritorious</u>.  It is not uncommon for litigants, <u>especially those litigating pro se</u>, to file more than one claim for legitimate reasons or have claims brought in state court to be later litigated in federal court, and vice versa.  Moreover, it is not uncommon for plaintiffs to repeatedly file motions, pleadings, or other papers due to basic unfamiliarity with the judicial process.

H. Stand. Comm. Rep. No. 1178, at 1473 (emphases added).  To address this concern, the legislature specified that vexatious litigants must have acted in bad faith.

> Your Committee, therefore, finds that the term "repeatedly" as used in Paragraphs [634J]-1(2) and (3) of the new chapter should refer to plaintiffs who relitigate in bad faith and who deliberately and intentionally abuse the system by bringing claims frivolously or causing unnecessary delay.  The passage of this bill is not meant to punish litigants that are unfamiliar with the judicial process and are earnestly attempting to protect or preserve their rights.  Your Committee has therefore amended this bill to insert the phrase "in bad faith."

Id. (emphases added).  The legislative history of HRS chapter 634J demonstrates that the inclusion of the bad faith requirement in HRS § 634J-1(2) and (3) was intended to limit the definition of vexatious litigant to those plaintiffs who attempt to relitigate in bad faith and who intentionally abuse the system by filing frivolous claims or deliberately cause unnecessary delay.  That is, the legislature did not intend to punish plaintiffs who earnestly attempt to protect or preserve their rights, even when the effort to do so involves the repeated filing of motions that appear unmeritorious.

In the vexatious litigant order in this case, the circuit court found that Au had filed seven motions that sought to relitigate the merits of the summary judgment order, and that each of those motions had been decided adversely to Au.  The court did not conclude orally or in the written order that any of Au's seven motions were frivolous, unmeritorious, or made in

bad faith--nor was such a finding made at the time the motions were denied by the court. The court also did not state that it was inferring bad faith from the totality of Au's conduct during the litigation.

Despite the circuit court's lack of findings as to bad faith, the ICA stated that the court could infer bad faith from Au's insistence on relitigating the same issues in differently titled motions. However, allowing the court to infer bad faith from the filing of motions that "relitgate the merits of the issues already disposed of," as the ICA did in this case, effectively reads the bad faith requirement out of HRS § 634J-1(2) and (3). In doing so, the ICA directly contravened the legislature's purpose of including the requirement that the plaintiff be found to have acted in bad faith before being deemed vexatious under HRS § 634J-1. H. Stand. Comm. Rep. No. 1178, at 1473 ("Paragraphs [634J]-1(2) and (3) of the new chapter should refer to plaintiffs who relitigate in bad faith[.]").

Further, the ICA's analysis on this issue was predicated on an incorrect interpretation of our caselaw. In concluding that the circuit court did not have to explicitly find that Au acted in bad faith, the ICA stated that bad faith does not need to be explicitly stated in a sanctioning order and

can be inferred from conduct. (Citing to <u>Bank of Hawaii v. Kunimoto</u>, 91 Hawai'i 372, 390, 984 P.2d 1198, 1216 (1999).) In <u>Kunimoto</u>, however, this court held only that where the circuit court makes findings that "are <u>tantamount to a specific finding of bad faith</u> . . . . [such] findings are sufficient to enable [an appellate] court to infer a specific finding of bad faith by the circuit court." 91 Hawai'i at 390, 984 P.2d at 1216 (emphasis added). We did not hold that the appellate court should scrutinize the record to determine whether it supports an inference that the circuit court made a specific finding of bad faith, let alone whether the record supports the making of an inference that the circuit court could, hypothetically, have made. Rather, the court in <u>Kunimoto</u> simply stated that in cases where the circuit court's findings are equivalent to a finding of bad faith, the appellate court will infer a specific finding of bad faith <u>by the circuit court</u>. <u>Id.</u> (holding that the circuit court's findings that the appellants' conduct constituted fraud upon the court, which was at best reckless and at worst knowing and intentional, was tantamount to a finding of bad faith by the court).

Here, the circuit court's findings that Au had filed seven motions that sought to relitigate the merits of the summary judgment order, and that each of those motions had been

decided adversely to Au, are not tantamount to a finding of bad faith.[20]  Cf. id.  Therefore, the ICA erred in concluding that the circuit court could have inferred bad faith from the filing of these motions.

The ICA also held that the circuit court is not obligated to make findings of fact or conclusions of law in granting a motion to declare a plaintiff a vexatious litigant under HRS § 634J-7.  It is well established, however, that orders imposing sanctions should "set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority."  Id.; see also Kawamata Farms, Inc. v. United Agri Prods., 86 Hawaiʻi 214, 257, 948 P.2d 1055, 1098 (1997); Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 459, 903 P.2d 1273, 1280 (1995); Kaina v. Gellman, 119 Hawaiʻi 324, 331, 197 P.3d 776, 783 (App. 2008) (stating that a sanctioning order "must inform the party of the authority pursuant to which he or she is to be sanctioned").  The requirement that a court should make findings that state the perceived misconduct with reasonable specificity when sanctions

---

[20]    Additionally, as discussed infra Part IV.D, a review of the seven motions that underlie the vexatious litigant order refutes the contention that they were collectively filed in bad faith.

are imposed has been applied in multiple situations, such as sanctions for discovery violations, filing a complaint, and delay in withdrawing a motion. Fujimoto v. Au, 95 Hawai'i 116, 153, 19 P.3d 699, 736 (2001) (failure to review court rule before filing the complaint); Kawamata Farms, 86 Hawai'i at 256, 948 P.2d at 1097 (discovery fraud); Enos, 79 Hawai'i at 460, 903 P.2d at 1281 (undue delay in withdrawing motion).

The making of findings regarding the purported misconduct, including bad faith, serves multiple important purposes. First, it clearly identifies and explains to the sanctioned person the conduct underlying the sanction. Additionally, findings that describe with reasonable particularity the perceived misconduct facilitate a meaningful and more efficient appellate review. Kunimoto, 91 Hawai'i at 390, 984 P.2d at 1216. Specifying the sanctioning authority, including the court's inherent authority if applicable, is also necessary for meaningful appellate review. Kaina, 119 Hawai'i at 331, 197 P.3d at 783. Finally, the findings assure both the litigants and the court that the decision to impose sanctions was the result of reasoned consideration. See Enos, 79 Hawai'i at 459, 903 P.2d at 1280 (stating that specific findings assure litigants and the judge that the decision was the product of thoughtful deliberation).

A prefiling order preventing the litigant from filing any new litigation, or an order during litigation that prohibits the filing of documents without leave of the court, is indisputably a sanction on that litigant.  See Black's Law Dictionary 1608 (11th ed. 2019) (defining "sanction" as "a provision that gives force to a legal imperative by either rewarding obedience or punishing disobedience").  Requiring trial courts to make findings of fact when declaring a plaintiff a vexatious litigant is also warranted by the fact that such determination under HRS chapter 634J, unlike monetary sanctions, continues to affect the litigant in future litigation and impairs the litigant's right to access the judicial system.  Thus, we hold that a court imposing a vexatious litigant order under HRS chapter 634J is required to make findings that set forth, with reasonable specificity, the perceived misconduct, including a finding of bad faith when applicable, and the authority under which the sanction is imposed.[21]  Cf. Kunimoto,

---

[21]    In concluding that the circuit court was not required to make any specific findings of fact, the ICA relied on HRCP Rule 52.  HRCP Rule 52, the ICA observed, provides that "findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion" unless the motion concerns amendment of a judgment or judgment on partial findings.  However, our cases establish the importance of setting forth findings of fact in a sanctioning order, regardless of the authority under which the sanctions are imposed.

91 Hawai'i at 390, 984 P.2d at 1216; Kaina, 119 Hawai'i at 331, 197 P.3d at 783.

The circuit court's order declaring Au a vexatious litigant under HRS § 634J-1(2) or (3) was therefore additionally deficient because it failed to specify the perceived misconduct that constituted bad faith and the court's findings were not tantamount to a finding of bad faith. Accordingly, the ICA erred in affirming the circuit court's order on this basis also.

**D. The Record Does Not Support a Finding of Bad Faith.**

The circuit court concluded that Au was a vexatious litigant because he filed seven motions that sought to relitigate the merits of the summary judgment order and each of those motions was decided adversely to Au. In affirming the circuit court, the ICA determined that Au met the definition of a vexatious litigant because, through the seven motions, he "continued to relitigate or attempt to relitigate issues of law or fact finally determined against him" in bad faith. A close review of the seven motions underlying the vexatious litigant order demonstrates that they do not support the ICA's inference that Au sought to relitigate the merits of the summary judgment order in bad faith.

Au's motion for reconsideration was the first motion underlying the vexatious litigant order. In this motion, Au

30

argued that the circuit court did not duly consider the contentions in the counterclaim, particularly his argument that he was the subject of a retaliatory eviction, before granting summary judgment for Bishop Estate. Bishop Estate maintained that Au waived this argument by not including it in his opposition. In denying the motion, the court stated only that its decision was based on its review of the record and for good cause.

In the second motion identified, the Rule 60(b) motion to vacate, Au contended that the $62,000 owed to Bishop under the settlement agreement was incorrectly calculated. Bishop Estate argued that Au waived this argument by failing to raise it in an earlier proceeding. The court's order denying this motion stated that its decision was based on the untimeliness of the motion, the unreliability of Au's proffered calculations, and Au's waiver of the argument by not raising it in his opposition to Bishop Estate's motion for summary judgment.

Au's renewed motion to vacate the summary judgment order, the third motion, sought to correct a deficiency in his motion to vacate that the court had identified, namely the unreliability of his calculations, by proffering a declaration from his accountant.

The fourth motion, Au's motion to reconsider CCSJ order, was filed when the third motion was pending. Au filed this motion apparently on the premise that the court might credit the new evidence in his renewed motion to vacate. Since the circuit court had considered, at least in part, the merits of the Rule 60(b) motion to vacate in determining that Au's calculations were unreliable, Au's motion to reconsider CCSJ order also sought to preserve his challenge to the counterclaim summary judgment order based upon his submission of the new evidence.

The fifth motion identified was Au's motion to vacate final judgment, which sought this relief because the final judgment had been entered while Au's renewed motion to vacate and the motion to reconsider CCSJ order were pending. Au contended that the premature entry of the final judgment would result in his notice of appeal being dismissed as premature. The motion was clearly an effort to ensure that issues were preserved for appeal by addressing the sequence of events involving the timing of the entry of the final judgment.

Au's motion for correction, the sixth motion, was filed prior to the court's denial of his motion to vacate final judgment. In this motion, Au asked the court to vacate the final judgment and prepare a new final judgment so that he could

properly seek appeal of the court's denial of his motion to reconsider CCSJ order. As with the motion to vacate final judgment, Au was attempting to preserve his right to appeal an adverse order. This motion was withdrawn at the hearing prior to its disposition.

Finally, the seventh motion was Au's motion to stay. In this motion, Au argued that enforcement of the judgment should be stayed pending the determination of a supersedeas bond. Au maintained that the amount of the supersedeas bond should not be set by the amount stated in the final judgment because certain attorneys' fees were erroneously awarded and because of the pending appeal of the court's rejection of his argument that the amount owed under the settlement agreement was incorrectly calculated. The court ultimately denied Au's motion because it found his proffered alternative security, a lien on certain real property, was an inadequate substitute for a supersedeas bond.

In each of the motions, Au presented arguments that were not demonstrably in bad faith or even frivolous. Indeed, the circuit court made no such finding on any of the motions. Although Au did include the rejected argument that the settlement agreement was based on an incorrect calculation in several of his motions, the mere inclusion of an apparently

unmeritorious argument within a motion asserting other grounds for relief does not establish that the motion was made in bad faith, or was done with the deliberate intent to delay the proceedings. See H. Stand. Comm. Rep. No. 1178, at 1473. As the legislature noted, HRS chapter 634J is not meant to punish litigants that are earnestly attempting to protect or preserve their rights.[22] Id.

Considering the seven motions both separately and together, the record does not support a finding that Au sought to relitigate the merits of the summary judgment order in bad faith.

### V.   CONCLUSION

For the foregoing reasons, the ICA's July 26, 2019 judgment on appeal and the circuit court's vexatious litigant order are reversed.

| | |
|---|---|
| Ronald G.S. Au<br>petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Dennis W. Chong Kee<br>Christopher T. Goodin<br>for respondents | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[22]   Although a defendant who files a frivolous motion is not subject to the vexatious litigant statute, defendants, including self-represented defendants, are subject to HRCP Rule 11 and may be sanctioned under its provisions in appropriate circumstances. See HRCP Rule 11(c).